MARY ALICE BURNSIDE CHURCH, INDIVIDUALLY AND AS GUARDIAN AD LITEM
FOR HER UNBORN ISSUE, FOR THE UNBORN ISSUE OF MORTON L. CHURCH, III, HELEN
DAY CHURCH PEERY, MARY BURNSIDE CHURCH, JOHN WARREN CHURCH; EDWARD
BRADFORD CHURCH, MORTON L. CHURCH, III, HELEN DAY CHURCH PEERY AS
GUARDIAN AD LITEM FOR WALTON STUART PEERY, IV AND ELLIOTT LEBARON
PEERY v. FIRST UNION NATIONAL BANK OF NORTH CAROLINA

No. 8226SC879

(Filed 19 July 1983)

1. **Trusts § 11— language in note excluding trustee from personal liability**
      The trial judge correctly gave defendant a directed verdict on plaintiffs'
   breach of promissory note claim where defendant signed the note "in our
   fiduciary capacity, but not individually . . . . First Union National Bank of
   North Carolina, Trustee." Under G.S. 36A-74(c), this language excluded the
   defendant as trustee from any personal liability.

2. **Trusts § 7— combining plaintiff's stock with others to be sold—no breach of
   fiduciary duty**
      Combining plaintiff's stock with that of others to be sold was not a breach
   of duty by defendant in its fiduciary capacity.

APPEAL by both parties from *Howell, Judge.* Judgment
entered 29 April 1982 in Superior Court, MECKLENBURG County.
Heard in the Court of Appeals 7 June 1983.

This action seeks damages and other relief based on an al-
leged breach of promissory note and breach of trust and
mismanagement by the defendant as trustee.

This dispute arises from a trust created by plaintiff Mary
Church on 16 October 1973. The primary purpose of the ir-
revocable inter vivos trust was to provide the plaintiff a way to
sell her Wachovia stock under the most advantageous tax rate.
The trust was funded with a nominal sum and the defendant was
appointed the trustee.

To obtain the tax advantages, the plaintiff sold her stock to
the defendant as trustee on 17 October 1973 and took an install-

ment note as payment. This note required the defendant to pay $621,843 plus 5 percent interest to the plaintiff in 12 annual installments of $51,820.25 on each 1 December, beginning in 1974. If there was a default on any payment due, the entire balance could be declared due and payable by the plaintiff.

On 18 October 1973, the plaintiff's stock was combined with that of her father's estate, her brother and another woman who had created a similar trust. This formed a block of over 65,900 shares of Wachovia stock.

Although the stock was selling for about $89.50 per share on the New York Stock Exchange on 18 October 1973, the best price for the block that could be obtained by Interstate Securities was $82 per share. The defendant rejected this offer. Interstate Securities was hired by the defendant.

Henry Mummaw, an Assistant Vice President and Trust Officer with the defendant, contacted the plaintiff during the fall of 1974 to discuss the trust's problems. On 21 November 1974, the plaintiff, her lawyer, and her husband, met with Mummaw and Ernest Hunter, head of the defendant's trust department. The plaintiff demanded payment at this meeting.

F. L. Rodenbeck, Jr., a Vice President and Senior Trust Officer with the defendant, wrote the plaintiff on at least three occasions in 1978. In those letters, he stated that 150 shares of the stock was being sold each month to meet the trust's liquidity needs.

A 29 November 1978 letter informed the plaintiff that the defendant could not meet the 1 December 1978 principal payment due without selling stock. The defendant did not consider a sale wise at that point and proposed making a partial payment on the principal and the entire interest payment due on 1 December 1978.

In a 31 August 1979 letter, Rodenbeck informed the plaintiff that the trust assets were exhausted. The balance of the 1 December 1978 principal payment due and the balance of the 1 June 1979 interest payment due were paid. The defendant as trustee also paid off a loan due to itself in a non-fiduciary capacity. That loan had been taken out by the defendant as trustee to meet earlier payments due to the plaintiff under the trust.

Church v. First Union Nat'l Bank

When all of the plaintiff's stock was sold, the defendant owed $362,741.75 on the note to the plaintiff.

The trial judge granted the defendant's directed verdict motion on the breach of promissory note claim at the close of the plaintiffs' evidence. Two issues were submitted to the jury: 1) Did the defendant breach its duty as trustee and 2) If so, what damages are the plaintiffs entitled to?

After the evidence was completed, the trial judge gave instructions to the jury on three separate occasions. When the jury came out for the fourth time, the trial judge inquired as to how they were divided.

On the fifth time that they came into the courtroom after deliberation, the jury answered "yes" to the breach of trust issue and $10,000 on the damages question. The trial judge informed the jury that those verdicts were inconsistent and gave another instruction.

The jury deliberated for a final time and returned with a verdict of $10 in damages. Post-trial motions by both parties were denied.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Gaston H. Gage and Debra L. Foster, for the plaintiff-appellants.*

*Helms, Mulliss & Johnston, by E. Osborne Ayscue, Jr., for the defendant-appellee.*

ARNOLD, Judge.

We first note that the defendant's statement of facts is over twenty pages long. Although Rule 28(c), N.C. Rules App. Proc. calls for a "full, non-argumentative summary" of facts, it also seeks only those "material facts necessary to understand" the case. The defendant's voluminous statement of the facts was unnecessary and we discourage this waste of time and resources in the future.

Although the massive briefs, record, exhibits, and oral arguments in this case indicate that this is a complicated matter, resolution of two issues disposes of all questions.

[1]   First, the trial judge was correct to give the defendant a directed verdict on the plaintiffs' breach of promissory note claim. On a G.S. 1A-1, Rule 50(a) motion for a directed verdict,

> the court must consider the evidence in the light most favorable to the non-movant, deeming all evidence which tends to support his position to be true, resolving all evidentiary conflicts favorably to him and giving the non-movant the benefit of all inferences reasonably drawn in his favor.

*Daughtry v. Turnage*, 295 N.C. 543, 544, 246 S.E. 2d 788, 789 (1978). W. Shuford, N.C. Civil Practice and Procedure § 50-5 (2d ed. 1981).

Although the note here allowed the plaintiff to accelerate the entire balance of the unpaid note upon failure or default in making payment by the defendant, the defendant signed it "in our fiduciary capacity, but not individually. . . . First Union National Bank of North Carolina, Trustee."

Under G.S. 36A-74(c), the current statute on trustee contracts, this language excluded the defendant as trustee from any personal liability. That statute states in part: "The addition of the word 'trustee' or the words 'as trustee' after the signature of a trustee to a contract shall be deemed prima facie evidence of an intent to exclude the trustee from personal liability."

The plaintiffs did not offer sufficient evidence to overcome the defendant's prima facie showing, even when considering all evidentiary conflicts in their favor. G.S. 36-35(c) was the relevant statute during much of this case until its repeal in 1977. *See* 1977 N.C. Sess. Laws Ch. 502, § 1. Because its provisions were verbatim to the current G.S. 36A-74(c), the result is the same under both statutes.

[2]   The second issue here is whether combining the plaintiff's stock with that of others to be sold was a breach of duty by the defendant in its fiduciary capacity. We hold that it was not.

G.S. 36A-2(a) states the standard of care for a fiduciary.

> In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for the benefit of another, a fiduciary shall observe the standard of judgment and care under the circumstances then prevailing, which an or-

dinarily prudent man of discretion and intelligence, who is a fiduciary of the property of others, would observe as such fiduciary; and if the fiduciary has special skills or is named a fiduciary on the basis of representations of special skills or expertise, he is under a duty to use those skills.

This standard is the same one stated in the RESTATEMENT (SECOND) OF TRUSTS § 174 (1959).

We find no breach of trust by the defendant under this prudent man standard and reverse the verdict on the issue of breach of trust. The plaintiff argues that the defendant should be held to a higher standard of care because it represented special skills and induced the plaintiff to create the installment trust.

The record does not support this contention. The plaintiff's husband, an officer of American Credit when the trust was created, testified that he encouraged the plaintiff to enter into the trust. Mr. Church was present at the plaintiff's two meetings with the defendant's representatives held to discuss the creation of the trust.

No overbearing by the defendant or financial duress of the plaintiff required her to sign the trust instrument. A reading of the entire transcript does not show a representation of skills greater than the average trustee. Absent such a representation, we refuse to hold that the defendant breached the prudent man standard.

The plaintiff also contends that the defendant breached its duty of loyalty by combining other shares of Wachovia stock with her stock for sale. She points to blockage discount, market overhang, and Wachovia's status as a thinly traded stock as evidence that combination for sale is a breach of trust.

We find no authority holding that the combination of stock for sale like this case is a breach of a trustee's duty of loyalty. In fact, Jimmie Tillman, a Vice-President of Interstate Securities in October, 1973 and the plaintiff's witness at trial, testified that the marketing of stock was a matter of professional judgment and experience. This Court on appeal cannot substitute its business judgment for that of a company with years of expertise in the sale of publicly traded stock. As a result, the defendant will not be held liable for hiring Interstate Securities to market the stock.

Because we find that the defendant is not liable, it is unnecessary to discuss any alleged errors in the jury instruction on damages or the jury's award of $10.

Reversed in part. Affirmed in part.

Judges WEBB and BRASWELL concur.